IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHELIA CHATMAN                                                                            PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:16CV009-NBB-SAA

JIMMY GRAY CHEVROLET, INC.,
AND JOHN DOES 1-10                                                                    DEFENDANTS

**MEMORANDUM OPINION**

Presently before the court is the defendant Jimmy Gray Chevrolet, Inc.'s motion to compel arbitration. Upon due consideration of the motion, response, and applicable authority, the court is ready to rule.

Factual and Procedural Background

On February 27, 2015, the plaintiff, Shelia Chatman, and her daughter, Danielle Chatman, entered into a Retail and Installment Sales Agreement ("Sales Agreement") with defendant Jimmy Gray Chevrolet, an automobile dealership in Southaven, Mississippi, for the purchase of a 2015 Chevrolet Camaro. The plaintiff was present as co-signor for her daughter. The plaintiff provided her proof of employment and a check stub to James Colson, a salesman for the defendant, and explained to him that she was an independent contractor with Shelby County Schools. The plaintiff and her daughter signed the Sales Agreement, and the defendant accepted their down payment of $5,500.00. Colson then gave the plaintiff and her daughter copies of the paperwork and the keys to the Camaro.

Several days later, Colson contacted the plaintiff's daughter and asked her to bring in another form of proof of residence. She did so. The defendant then informed the plaintiff's daughter that the phone number given for the plaintiff's employer was incorrect. The plaintiff

alleges that her daughter gave the defendant's manager, Gary Johnson, the correct number but that Johnson did not record the number or attempt to call the plaintiff's employer in the plaintiff's daughter's presence.

Upon the plaintiff's daughter's departure from the dealership in the Camaro, the defendant contacted the Southaven Police Department and reported that the car had been acquired under false pretenses. The case was assigned to Detective Seth Kern. Kern later contacted Kevin Smith, an employee of the defendant, about the case. Smith filed a police report against the plaintiff's daughter which included Smith's affidavit. The Southaven Police Department later retrieved the Camaro, arrested the plaintiff's daughter, and returned the Camaro to the defendant. The plaintiff's daughter was incarcerated for five days.

On May 7, 2015, the plaintiff was charged in a single count indictment alleging that she obtained the Camaro by false pretenses and intended to cheat and defraud the defendant by providing false paperwork. The plaintiff was eventually arrested and taken to jail in Memphis, Tennessee, where she remained for seven days before she received a bond and was released. The charges against both the plaintiff and her daughter were later dismissed.

The plaintiff alleges that the defendant issued false statements to the Southaven Police Department and falsely instituted criminal proceedings against her due to the defendant's failure to verify her employment thoroughly or provide ample time for her to give additional proof of employment. The plaintiff asserts numerous state law causes of action against the defendant, including malicious prosecution, negligence, gross negligence, intentional infliction of emotional distress, defamation, civil conspiracy, civil assault and battery, false arrest/false imprisonment, abuse of process, and breach of contract. On January 8, 2016, the plaintiff filed the present

action in this court on the basis of diversity jurisdiction, averring that she is a citizen of Tennessee, and the defendant is a citizen of Mississippi, as it is a Mississippi corporation with its principal place of business in Mississippi. The defendant timely answered and subsequently filed this motion to compel arbitration.

Analysis

The defendant moves the court to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration Act (the "FAA") based on an arbitration agreement contained in the Sales Agreement. The defendant argues that the arbitration agreement is enforceable and binding and that it contains a delegation clause that requires that an arbitrator decide gateway issues and the interpretation and scope of the arbitration agreement itself, including whether the claims brought by the plaintiff are arbitrable under the terms of the agreement. The defendant also moves the court to enter a final judgment dismissing this action and enjoining the plaintiff from attempting to prosecute any claims against the defendant until the arbitration is concluded and confirmed.

The plaintiff argues that the court should deny the motion to compel arbitration because the defendant waived its right to arbitration when it instigated criminal proceedings against her and because the delegation clause in the arbitration agreement is procedurally and substantively unconscionable.

Under the FAA, written agreements to arbitrate controversies "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA does not afford the district court any discretion "but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Boyd*, 470 U.S. 213, 218 (1985).

3

In ruling on the defendant's motion, the court must complete a two-prong analysis: "whether the parties entered into *any arbitration agreement at all*" and "whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, No. 15-41507, 2016 WL 3923866, at *2 (5th Cir. July 20, 2016) (emphasis in original).

First, the court must determine whether the parties entered into an arbitration agreement. To do so, the court applies the contract law of the particular state governing the agreement. *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264. The Sales Agreement in the present case provides that federal law and Mississippi law apply. Under Mississippi law, whether a valid arbitration agreement exists is governed by basic principles of contract law and an examination of whether the elements of a contract are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013).

In the present case, it is undisputed that the plaintiff, her daughter, and the defendant's salesman, James Colson, signed the purchase application and that they subsequently entered into a contract, the Sales Agreement, for the purchase of the Camaro. It is likewise undisputed that the plaintiff and her daughter paid, and the defendant accepted, a $5,500.00 down payment. Thus, the Sales Agreement involved two or more contracting parties; consideration was present; the Sales Agreement was sufficiently definite; and the contract represents a mutual agreement between the parties. The parties have not alleged that either party lacked the legal capacity to enter into a contract; nor have they alleged that any legal prohibition exists that would preclude contract formation. Therefore, each element of a valid contract is present.

4

The Agreement to Arbitrate contained in the Sales Agreement provides as follows:

> By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

The plaintiff and her daughter signed this provision. Below the Agreement to Arbitrate provision is a section concerning alternative dispute resolution which states as follows:

> You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy of these documents when you signed them.

The plaintiff and her daughter signed this provision as well. The Arbitration Provision provides in pertinent part as follows:

> Any claim or dispute, whether in contract, tort . . . or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship shall, at your or our election, be resolved by neutral binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute.

The Sales Agreement further provides that "[a]ny arbitration under this Arbitration Provision shall be governed by the [FAA] and not by any state law concerning arbitration." The court finds that the parties entered into an agreement to arbitrate and now turns to the question of whether the plaintiff's case falls within the scope of the arbitration agreement.

While the question of whether a plaintiff's claims are covered by an arbitration agreement is based on contract interpretation and is ordinarily a question for the court, not the arbitrator, "where the arbitration agreement contains a delegation clause giving the arbitrator the

5

primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 2016 WL 3923866, at *2. The subject arbitration agreement contains a delegation clause that provides in pertinent part: "[a]ny claim or dispute, whether in contract, tort . . . or otherwise (**including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute**) . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral binding arbitration and not by a court action." (Emphasis added). Similarly worded clauses have been held to be valid delegation clauses in various cases. *See, e.g.*, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66-72 (2010) ("The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 259 (5th Cir. 2015) ("The parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person.").

For the foregoing reasons, the court finds that the Arbitration Agreement contains a valid delegation clause, and the court is, therefore, required to "leave any challenge to the validity of the Agreement as a whole to the arbitrator." *Rent-A-Center, West, Inc.*, 561 U.S. at 72. Thus, the court may consider the plaintiff's arguments only to the extent that they challenge the delegation clause. *Id.*

The plaintiff's arguments, which propose to challenge the delegation clause itself, include that the delegation clause is invalid because the defendant waived its right to arbitrate when it

initiated criminal proceedings against the plaintiff in DeSoto County as a result of the dispute over the Sales Agreement, and further that the contractual agreement to arbitrate should not be enforced because it is procedurally and substantively unconscionable.

"[The FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The court is of the opinion that the issue of waiver as expressed by the plaintiff is a "doubt[ ] concerning the scope of arbitrable issues" and is a "defense to arbitrability" as a whole, rather than a specific challenge to the delegation clause. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Because the waiver issue goes to the scope of arbitration, which in this case must be decided by the arbitrator given the existence of the delegation clause, the court finds that the issue must be decided by the arbitrator and not the court.

The plaintiff next argues that the delegation clause, or agreement to arbitrate arbitrability, is unconscionable and thus invalid. The plaintiff maintains that the delegation clause is both procedurally and substantively unconscionable, because (1) she did not agree to delegate the "gateway issue" to an arbitrator; (2) the Agreement to Arbitrate provision failed to mention the delegation clause or the concept of arbitrating arbitrability; and (3) the plaintiff never signed or agreed to the delegation clause, which was contained on a separate page with no signature block and was hidden. The plaintiff asserts that at the time of the agreement she did not understand that an agreement to arbitrate and an agreement to enforce arbitrability were two separate agreements forfeiting different rights. The plaintiff further asserts that the delegation provision

7

is separate and distinct from the agreement requesting the plaintiff's signature on the front of the contract and that no print in boldface indicates scope, interpretation, or arbitrability; nor does it address the rights the plaintiff would forfeit in the event she agreed to arbitration. The plaintiff contends that every detail concerning the delegation clause in the agreement is in extremely fine print. The plaintiff argues that the defendant neither read the provision to her nor directed her attention to it. Finally, the plaintiff argues that the defendant's bargaining power substantially outweighed her bargaining power and that for all of these reasons the delegation provision at issue is procedurally and substantively unconscionable.

In Mississippi, "unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). "Procedural unconscionability may be proven by demonstrating 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 503 (quoting *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002)). The plaintiff's argument focuses on her lack of understanding of the terms of the arbitration agreement and specifically the delegation provision. However, "parties are charged with understanding the terms of contracts that they sign." *Id.* Further, "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him . . . ." *Continental Jewelry Co. v. Joseph*, 105 So. 639, 639 (Miss. 1925).

The delegation clause at issue is written in conspicuous type and clearly states that the arbitrability of claims must be determined by the arbitrator. The arbitration agreement features the boldface Agreement to Arbitrate provision and clear instructions that by signing the provision the signer demonstrates agreement with the arbitration provision, directs the signer to the arbitration provision "on the reverse side of this contract," and instructs the signer to "[s]ee the Arbitration Provision for additional information concerning the agreement to arbitrate." The plaintiff's signature under the "Agreement to Arbitrate" provision signifies her understanding of the terms. Additionally, the Arbitration Provision contains portions written in boldface and all capital letters, particularly the instruction to "PLEASE REVIEW" the provision and that "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." The delegation provision, which is contained within the Arbitration Provision, provides that "[a]ny claim or dispute, whether in contract, tort . . . or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute) . . . shall be resolved by neutral, binding arbitration and not by a court action."

"Substantive unconscionability may be proven by showing the terms of the [delegation clause] to be oppressive." *Bell*, 358 Fed.Appx. at 503 (quoting *E. Ford, Inc.*, 826 So. 2d at 714). "An agreement may be substantively unconscionable when it is one-sided and one party is deprived of all the benefits of the agreement or left without a remedy for the other party's nonperformance or breach, a large disparity between cost and price or a price far in excess of that prevailing in the market price exists, or the terms bear no reasonable relationship to business risks assumed by the parties." *Id.* (citing *Miss. Credit Center, Inc. v. Horton*, 926 So. 2d 167,

177 (Miss. 2006)). "To determine whether a contract is substantively unconscionable, 'we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Caplin Enters., Inc. v. Arrington*, 145 So. 3d at 608, 614 (Miss. 2014). "It is not necessary that [delegation clauses] contain 'mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner.'" *Id.* (quoting 21 Williston on Contracts § 57:15 (4th ed. 2013)). "But 'disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter . . . that the [delegation clause] becomes unconscionable and oppressive.'" *Id.* With respect to the delegation clause at issue, both parties have the power to compel arbitration over a dispute, indicating mutuality of the arbitration clause. *See Griffin v. ABN Amro Mortgage Group., Inc.*, 378 F. App'x. 437, 439 (5th Cir. 2010).

Because the court finds the existence of a valid delegation clause, the court does not reach the arbitrability dispute and instead must stay the case *sub judice* and refer the matter to arbitration according to 9 U.S.C. § 3, which provides that "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," the court "shall . . . stay the trial of the action until such arbitration has been had."

## Conclusion

For the foregoing reasons, the court finds that the defendant's motion to compel arbitration is well taken and should be granted. This matter will be referred to arbitration for the purpose of determining whether the claims at issue are arbitrable. The case will be stayed pending the outcome of this determination, and the parties will be enjoined from attempting to

prosecute any claims against each other until such time as the arbitrability issue is decided. A separate order in accord with this opinion shall issue this day.

This, the 30th day of September, 2016.

                                            /s/ Neal Biggers
                                            **NEAL B. BIGGERS, JR.**
                                            **UNITED STATES DISTRICT JUDGE**